**FILED**
2004 Dec-07  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

*Hope v. State*, 521 So. 2d 1383, 1389 (Ala. Cr. App. 1988) (*quoting Moore v. State*, 502 So. 2d 819, 820 (Ala. 1986)).

*Boyd*, 746 So. 2d at 400-01.

As the state court correctly observed, petitioner's present claim simply is a catalogue of conclusory assertions. The Alabama Court of Criminal Appeals rejected the claim because the specific allegations on which it is based did not include a "full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true." For the same reason, this court also rejects petitioner's "lack of strategy" contention. *See Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("'This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.'") (quoting *Miller v. Johnson*, 200 F.2d 274, 282 (5th Cir. 2000)) (other citation omitted); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970)).

### 9.    Failure to object to erroneous instructions given by the trial court at the guilt/innocence phase of trial (Claim H-7 in Petition)

Boyd maintains that his trial attorneys were ineffective because they failed to object to erroneous instructions by the trial court at the guilt/innocence phase of trial.

Boyd raised this claim during post-conviction proceedings, and the Alabama Court

of Criminal Appeals made the following findings:

> ### I.M., XXIV, and XXVIII.
>
> Boyd claims that erroneous instructions were given by the trial court at the guilt phase of his trial and that his counsel was ineffective for failing to object to these instructions.
>
> . . .
>
> Boyd contends that his trial attorneys were ineffective because they did not object to what he says were erroneous instructions. According to Boyd:
>
>> "Trial counsel's failure regarding the court's jury charges were manifold. They did not object adequately to the absence of a proper instruction on accomplice testimony; to the court's improper charges on lesser included offenses, including the absence of a felony murder instruction; to improper charging of multiple offenses; to the confusing charge on reasonable doubt; to the failure to define all critical terms to the jury; or to the flawed charge on intent to kill with regard to accomplice liability. Counsel failed adequately to object to the court's refusal to charge the jury on the distinction between murder and capital murder. *See* [Issue] XXVIII. . . . Trial counsel further failed to object to improper and prejudicial verdict forms. *See* [Issue] XXIV.
>>
>> "Had counsel requested proper charges, made the necessary objections and secured accurate instructions, Mr. Boyd's jury would not have convicted him of the capital murders of both Fred and Evelyn Blackmon. Petitioner's counsel were ineffective for their handling of the instructions at their client's trial for his life."
>
> (Appellant's brief at p. 22.)

Regarding Issue XXIV Boyd argues that trial counsel was ineffective because error was committed when the trial court

"gave the jury only one acquittal form for each victim even though the court instructed the jury on eight counts of capital murder . . . The failure to provide the jury with acquittal verdict forms *for each and every one of the eight capital murder counts* deprived the jury of the opportunity to consider each count separately and effectively coerced the jury into returning a guilty verdict on four counts of capital murder *even if it only believed Mr. Boyd guilty of one count of capital murder and not guilty on the other counts*."

(Appellant's brief at pp. 88-89.) (Emphasis in appellant's brief.)

No error was committed because[,] when Boyd was convicted in 1987, before the effective date of the Alabama Rules of Criminal Procedure, the

"common law in Alabama . . . allowed a general verdict of guilty to be returned if any one count or offense in the indictment was sustained by the proof, so long as the sentence pronounced did not impose a greater punishment than that prescribed for one of the offenses charged in the indictment. *See Black v. State*, 39 Ala. App. 269, 97 So. 2d 833 (1957) (upheld general verdict returned on indictment in two counts charging two distinct offenses)."

*Knotts v. State*, 686 So. 2d 431, 462 (Ala. Cr. App. 1995), *aff'd, Ex parte Knotts,* 686 So. 2d 486 (Ala. 1996). Other than the fact that Milstead and Boyd each blamed the other for the actual killings, the facts in this case were undisputed. If the jury believed that Boyd killed the Blackmons, he was subject to a conviction for each of the eight counts. Each conviction warranted a death sentence. The sentence pronounced did not impose a greater punishment than that prescribed for one of the offenses charged in the indictment.

Counsel cannot be said to be ineffective for not filing a motion for

which there is no legal basis. *See Patrick v. State*, 680 So. 2d 959, 963 (Ala. Cr. App. 1996); *Hope v. State*, 521 So. 2d 1383, 1386 (Ala. Cr. App. 1988).

> Regarding Issue XXVIII Boyd argues:
>
> "During the deliberations at Mr. Boyd's capital trial, the jury returned a note to the trial court stating 'Could we have distinction between murder and capital murder?'. . . The Court refused to answer the question, and, instead, indicated that the terms had already been defined and that the jury should use its own recollection of the definitions to determine the distinction. . . . Without receiving any further instruction, the jury returned with a verdict of guilty as charged in the indictment. *The jury was allowed to return a guilty verdict of capital murder even though it had indicated it did not understand the charge of capital murder.*"

(Appellant's brief at p. 93.) (Emphasis in appellant's brief.) The substantive claim was decided adversely to Boyd on direct appeal. We stated:

> "Furthermore, we do not find the trial judge's refusal to give additional instructions to the jury on murder and capital murder to be error, since the trial judge thoroughly instructed the jury on these matters in his oral charge to them. There is no basis of error to reversal shown here."

542 So. 2d 1247, 1259 (Ala. Cr. App. 1988).

Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. *See Patrick v. State*, 680 So. 2d 959, 963 (Ala. Cr. App. 1996); *Hope v. State*, 521 So. 2d 1383, 1386 (Ala. Cr. App. 1988).

Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance" *Strickland*, 466

U.S. at 689, 104 S. Ct. 2052, regarding Issue XXVIII and Issue XXIV. Nor has Boyd shown regarding these issues that there is a reasonable probability that, if trial counsel had made these objections, the result of the trial would have been different.

Other claims presented as ineffective assistance of counsel under I.M.[45] are based on mere assertions and conclusions and have been insufficiently pleaded in that they lack the necessary specificity. Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P.

*Boyd*, 746 So. 2d at 394-95 (footnote omitted).

Boyd now raises a virtually identical claim in this court. His first set of allegations is that his attorneys did not object to: (1) the absence of a proper instruction on accomplice testimony; (2) the court's improper charges on lesser included offenses, including the absence of a felony-murder instruction; (3) improper charging of multiple offenses; (4) the burden-reducing charge on reasonable doubt;

---

[45] The Alabama Court of Criminal Appeals does not clearly specify at this juncture the "[o]ther claims presented as ineffective assistance of counsel under I.M." This court concludes, nonetheless, that the state court was referring to Boyd's list of claims that his trial counsel

did not object adequately to the absence of a proper instruction on accomplice testimony; to the court's improper charges on lesser included offenses, including the absence of a felony murder instruction; to improper charging of multiple offenses; to the confusing charge on reasonable doubt; to the failure to define all critical terms to the jury; or to the flawed charge on intent to kill with regard to accomplice liability.

*Boyd*, 746 So. 2d at 394. The Court of Criminal Appeals stated that Boyd raised these claims, in addition to his claims that: (1) his trial attorneys failed to adequately object to the court's refusal to charge the jury on the distinction between murder and capital murder, and (2) that his trial counsel failed to object to improper and prejudicial verdict forms. The Court went on to discuss why, under *Strickland*, trial counsel was not ineffective with regard to the two *latter* claims. Thus, by a process of elimination, the "other claims presented as ineffective assistance of counsel under I.M." could only refer to the remaining "list" of claims quoted above.

(5) the failure to define all critical terms to the jury; and, (6) the flawed charge on intent to kill with regard to accomplice liability.

The Alabama Court of Criminal Appeals concluded that these claims were "based on mere assertions and conclusions and have been insufficiently pleaded[,] in that they lack the necessary specificity . . . ." *Boyd*, 746 So. 2d at 395. Boyd failed to produce any additional evidence in the petition he filed in this court.[46] Without any evidence to support these allegations, they are due to be disregarded. *See Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("'This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.'") (citing *Miller v. Johnson*, 200 F.2d 274, 282 (5th Cir. 2000)) (other citation omitted); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970)).

Boyd also renews his claim that trial counsel "failed adequately to object to the court's refusal to charge the jury on the distinction between murder and capital murder," and that "trial counsel further failed to object to improper and prejudicial

---

[46] *See* doc. no. 27 (Petitioner's principal brief), at 85-87.

jury verdict forms."[47] The Alabama Court of Criminal Appeals correctly identified *Strickland* as the controlling legal standard. *Boyd*, 746 So. 2d at 374-76; 395. By doing so, the state court did not reach a conclusion different from the United States Supreme Court on a question of law. Boyd has not cited a decision in which the United States Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court. Thus, the state court's decision was not "contrary to" clearly established federal law, as determined by the Supreme Court.

Once again, however, Boyd argues that the state court's decision was an unreasonable application of *Strickland*. He claims that the court erred in finding that Boyd's claims of ineffectiveness had "no legal basis." With regard to Boyd's claim that counsel failed to object adequately to the court's refusal to reinstruct the jury on the distinction between murder and capital murder, the state appellate court found that there was no legal basis for such an objection, because the trial court had thoroughly instructed the jury on these matters in its oral charge. The state appellate court also found no legal basis for Boyd's claim that trial counsel failed to object to allegedly improper and prejudicial verdict forms, because, on the date of Boyd's trial, which occurred before the adoption of the Alabama Rules of Criminal Procedure, the common law of that state allowed a general verdict of guilty to be returned, so long

---

[47] *Id.* at 85.

106

as any count of the indictment was sustained by proof, and the sentence did not impose a greater punishment than that prescribed for the offense. The appellate court found that Boyd's attorneys were not ineffective for failing to make these objections, and that Boyd had not shown that he was prejudiced by his attorneys' actions.

Upon consideration of this claim, the court concludes that petitioner has offered nothing to convince this court that the state court's findings were objectively unreasonable.

### 10. Failure to object to prosecutorial misconduct (Claim H-8 in Petition)

Boyd claims that his attorneys were ineffective because they failed to object to improper arguments, misleading statements of facts and law, and other misconduct of the prosecuting attorneys throughout the trial and sentencing hearing. Boyd raised this claim during post-conviction proceedings, and the Alabama Court of Criminal Appeals made the following findings:

I.H.-A.

Boyd argues that during opening and closing arguments, without objection from the defense, the prosecutor made exaggerated comments about Evelyn Blackmon's injuries, which were not supported by facts; stated whose "idea" it was to kill the Blackmons, without supporting facts in the record; stated that Boyd told Kenny Surrett that he had killed two people; made inaccurate representations about what Boyd told the police concerning his role in the crime; provided improper commentary on the answers Boyd gave to police interrogators; and made improper comments to the jury about Boyd's reasons for calling certain defense witnesses.

107

"During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference. . . . To justify reversal because of an attorney's argument to the jury, this court must conclude that substantial prejudice has resulted."

*Hyde v. State*, [Ms. CR-95-2036, January 30, 1998] [778] So. 2d [199] (Ala. Cr. App. 1998). Boyd's alleged instances of misconduct do not demonstrate how he was prejudiced. As was stated in *Hyde*:

"Viewed in the context of the entire trial, the alleged instances of misconduct, even if they constituted misconduct, did not so infect the trial with unfairness as to make the resulting sentence a denial of due process. In fact, the jury recommended a sentence of life imprisonment without the possibility of parole, not death. Therefore, this issue is without merit."

[778] So. 2d at [229]. Here, the jury returned a recommendation of life imprisonment without parole. Therefore, Boyd has not shown how counsel's performance resulted in prejudice. Moreover, we have searched the record on direct appeal for "plain error" that may have adversely affected Boyd's substantial rights and have found none. "A finding of no plain error is one factor to consider when assessing the performance of trial counsel." *Grayson v. State*, 675 So. 2d 516, 524 (Ala. Cr. App. 1995) (quoting *Hallford v. State*, 548 So. 2d 526 (Ala. Cr. App. 1988), *aff'd*, 548 So. 2d 547 (Ala.)).

## I.H.-B.

Boyd argues that the prosecution misled the jury by telling it that there was no evidence tending to show whether Milstead would receive a sentence of life imprisonment or death. This, according to Boyd, was a falsehood because, he says, Milstead was testifying against Boyd in exchange for his life. The circuit court at the Rule 32 hearing would not hear testimony from Milstead's defense attorney who, according to Boyd, would have testified that the agreement between the State and Milstead was that in return for testifying against Boyd he could escape

the death penalty. Appellant's brief at p. 76, n. 22.

Again the jury's recommendation of life imprisonment without parole negates his showing that he was prejudiced by counsel's performance. Moreover, we have searched the record on direct appeal for "plain error" that may have adversely affected Boyd's substantial rights and found none. "A finding of no plain error is one factor to consider when assessing the performance of trial counsel." *Grayson v. State*, 675 So. 2d 516, 524 (Ala. Cr. App. 1995) (*quoting Hallford v. State*, 548 So. 2d 526 (Ala. Cr. App. 1988), *aff'd*, 548 So. 2d 547 (Ala. 1989)).

. . . .

### I.H.-E.

Boyd argues that the prosecutor misstated the law by suggesting to the jury that it had a duty to Robert Milstead to convict Boyd of capital murder. Boyd also argues that the prosecutor improperly suggested to the trial court that the court had no authority to impose a sentence of life imprisonment without parole and improperly sought the death sentence by relying on religious precepts. "[T]he trial court is presumed to know the law and to disregard any improper comments or evidence in sentencing." *Hyde, supra*. Without a more specific argument, we assume that the trial court did that. Boyd has not demonstrated how he was prejudiced. Moreover, we have searched the record on direct appeal for "plain error" that may have adversely affected Boyd's substantial rights and found none. "A finding of no plain error is one factor to consider when assessing the performance of trial counsel." *Grayson v. State*, 675 So. 2d 516, 524 (Ala. Cr. App. 1995) (quoting *Hallford v. State*, 548 So. 2d 526 (Ala. Cr. App. 1988), *aff'd*, 548 So. 2d 547 (Ala.)).

In addition to the above, Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had objected to the allegedly improper comments, the result of the trial

would have been different.

*Boyd*, 746 So. 2d at 389-90.

Boyd presents this same claim of trial counsels' failure to object to prosecutorial misconduct in his federal habeas petition. He offers the following arguments in support of it:

Trial counsel did not object to the improper arguments, misleading statements of facts and law, and other misconduct of the prosecuting attorneys throughout the trial and sentencing of William Glenn Boyd. (Tab #P. ___, R. 329, 331, 333, 335, 347, 348, 887, 899, 900, 901, 902, 903, 907, 909, 1001, 1003, 1004, 1025, 1026-27). Trial counsel failed to object to improper questioning of state witnesses (R. 737-8, 840) and improper cross examination of defense witnesses. Prosecutorial misconduct — particularly when it occurs repeatedly and goes uncorrected, as it did in this case — can render a trial fundamentally unfair. The prosecution misstated facts, mislead the jurors as to the law, and made improper arguments during the sentencing hearing before the court. *See infra.*[48] Trial counsel's failure to object allowed the jurors, among other problems, to consider inadmissible evidence in their deliberations and to be swayed by the improper remarks of the district attorneys. Trial counsel's failure to object promptly, secure curative instructions, and ensure that both jury and judge were influenced only by proper considerations rendered the outcome of petitioner's trial and sentencing unreliable.

While trial counsel may have meant the best for their client, their unfamiliarity with capital litigation, the need for heightened precautions, and the necessity of preserving the record prejudiced their client immeasurably. Indeed, Mr. Levinson — who was both trial and appellate counsel — believed that Mr. Boyd's rights were adequately preserved by the plain error doctrine! (Tab #P. 51, PCR Vol. 16 at 155). Trial counsel's failures to object to the misconduct of the prosecuting

---

[48] Boyd appears to be referring to claim T in his principal brief (doc. no. 27, at 133-35).

attorneys harmed their client at the guilt phase, at the penalty phases before the jury and judge, and on appeal.

Doc. no. 27, at 87-88 (footnote omitted).

When reviewing this claim, the Alabama Court of Criminal Appeals correctly identified *Strickland* as the controlling legal standard for claims of ineffective assistance of counsel. *Boyd*, 746 So. 2d at 374-76, 390. Thus, the court did not reach a conclusion different from the Supreme Court on a question of law. Boyd also has not cited a decision in which the Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in his case. Accordingly, the state court's decision was not "contrary to" clearly established federal law, as determined by the Supreme Court.

Boyd nevertheless argues that the state court's decision was an unreasonable application of *Strickland*, because it ignores the fact that many of these issues affected the jury's penalty phase determination. He conjectures that, if the jury had not been misled by the state prosecutors, more than seven of the jurors might have voted for life without parole, and the trial judge then might not have rejected the jury's sentencing recommendation. Boyd, however, has not offered any evidence to support his speculation. The state court's findings were not objectively unreasonable.

111

## 11.   Failure to object to improper victim impact testimony (Claim H-9 in Petition)

Boyd claims that his attorneys were ineffective because they failed to object

to the improper victim impact evidence that permeated the trial and infected the

sentencing hearing. Boyd raised this claim during post-conviction proceedings, and

the Alabama Court of Criminal Appeals stated:

### I.E. and XVII.

Boyd claims that improper victim impact evidence was admitted and that it permeated the trial and sentencing. He also argues that his trial counsel was ineffective for allowing the admission of the evidence.

. . . .

Boyd contends that trial counsel erroneously allowed the trial court to consider a presentence report that included the explicit desire of the victims' families that Mr. Boyd be put to death. Boyd is referring to the following information contained in the presentence report:

### "*Victim Impact*

"No Victim Impact Reports were mailed out in this case due to the short time between the jury verdict and date of sentencing. However, reports indicate that this was a heinous crime involving kidnapping, robbery, and capital murder. The death penalty was being sought for both Milstead and Boyd until Milstead elected to plead guilty and testify at the trial of Glenn Boyd.

"Both victims in this case were traumatized with a stick before being shot multiple times. Mrs. Blackmon was bound and gagged before being hit in the face and then shot. The families suffered great emotional stress over not only the abduction and murders of the Blackmons but also suffered additionally through

112

the several additional days that it took to recover the bodies. Through decomposition of the bodies, identification then had to be made through dental and other medical records.

"The State contends that the family of both victims have suffered great mental and emotional distress at the hands of Glenn Boyd and Robert Milstead and they continue to seek the death penalty in this case."

(C.R. in direct appeal, p. 386.)

Trial counsel was not ineffective because the record from direct appeal indicates that there was no victim's impact statement. (direct appeal, C.R. 386.)

Moreover, *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991), holds:

"If a State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated."

(*overruling Booth v. Maryland*, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), and *South Carolina v. Gathers*, 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed. 2d 876 (1989)).

Moreover, even if the information in the presentence report was considered to be an inadmissible victim's impact statement, we would not find that its admission prejudiced Boyd. This alleged victim impact statement consisted of 14 lines in a 7-page report. Additionally, the presentence report in this case was not presented to the jury, but was presented to the court. There was no indication in the trial court's

113

sentencing order that it had considered the alleged victim's impact statement in sentencing Boyd. "[A] remand [for new sentencing] is not required in every death penalty case in which a victim impact statement appears in a presentence investigation report." *Arthur v. State*, 711 So. 2d 1031, 1092 (Ala. Cr. App. 1996), *aff'd*, 711 So. 2d 1097 (Ala. 1997). *Arthur* was distinguished from *Booth* (which was subsequently overruled by *Payne*) as follows:

> "[The appellant] next contends that the introduction of victim impact information at the sentencing phase of the trial violated the Eighth and Fourteenth Amendments to the United States Constitution.
>
> "After the jury had rendered its advisory verdict in the sentencing phase of the trial, but before the trial court had pronounced sentence, a 'presentence report' was filed by the Alabama Board of Pardons and Paroles. That report contained the following statement, which, [the appellant] contends, violates the Eighth and Fourteenth Amendments:
>
>> "It is the belief of this officer that this offense has had a significant impact on the lifestyle of [the victim's wife]. She is now a single parent whose son has lost his father. She reports that her life has changed socially, emotionally, and that she is very paranoid, often nervous and very easily upset.'
>
> ". . . .
>
> ". . . In the present case, the presentence report [containing the victim's impact information] was not presented to the jury, but was presented to the court. We also note that the victim impact information comprises only three sentences in a 36-page report that contains, among other things, details of the offense, mitigating and aggravating circumstances, [appellant's] criminal record, and [appellant's] personal history. We hold that the introduction of the presentence report containing the above

114

statement was not error."

*Arthur v. State*, 711 So. 2d at 1092 (quoting *Ex parte Martin*, 548 So. 2d 496, 497-98 (Ala. [1989]), *cert. denied*, 493 U.S. 970, 110 S. Ct. 419, 107 L. Ed. 2d 383 (1989)); *Ex parte Rieber*, 663 So. 2d 999 (Ala. 1995). Boyd has not shown that trial counsel's failure to object constituted deficient performance or that he was prejudiced by counsel's performance. Nor has Boyd shown that counsel's performance was outside "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052, or that there is a reasonable probability that, if trial counsel had made these objections in a different manner, the result of the trial would have been different.

*Boyd*, 746 So. 2d at 383-84 (footnote and some internal quotation marks omitted).

Boyd raises the same claim in his habeas petition. In support of the claim, he

offers the following argument:

Improper victim impact evidence permeated Mr. Boyd's trial and sentencing. From the start of the case the prosecutor gave the impression that Mr. Boyd was being tried not on behalf of the state but the victims' families. (Tab. #P-13, R. 288, 348, 907). The district attorney went so far as to tell the jurors that the case before them was not a matter between the state and the defendant but rather between Mr. Boyd and the Blackmons. (R. 348). The opening and closing arguments were otherwise riddled with improper references to the pain of surviving family members. (R. 331, 333, 888, 903, 909, 1001, 1003, 1004). Trial counsel made no objections to any of these improper tactics.

Most critically, counsel failed to challenge the use of the penalty recommendations of the family members against Mr. Boyd at the trial court sentencing. *Payne v. Tennessee*, 111 S. Ct. 2597 (1991) (survivors may not comment about appropriate punishment for defendant). Had counsel registered the appropriate objections to this improper and inflammatory evidence, the outcome of both trial and sentencing would have been different. Mr. Boyd was prejudiced by the failures of his

115

> counsel to object accordingly. *See, e.g., State v. Storey*, 901 S.W. 2d 886 (Mo. 1995) (counsel ineffective for failing to object to arguments about victim's worth).

Doc. no. 27, at 89-90.

The Alabama Court of Criminal Appeals correctly identified *Strickland* as supplying the appropriate standard for reviewing Boyd's claim. *Boyd*, 746 So. 2d at 374-76, 384. The court applied the correct legal rule and, accordingly, did not reach a conclusion different from the United States Supreme Court on a question of law. Boyd has not cited a decision in which the Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in his case. The state court's decision thus was not "contrary to" clearly established federal law, as determined by the Supreme Court.

Even so, Boyd argues that the state court's decision was an unreasonable application of *Strickland* to the facts of his case. He contends that, in refusing relief on this claim, the state court failed to confront the fact that consideration of the opinions of the victims' surviving relatives about the sentence that should be imposed upon a defendant convicted of a capital offense is not constitutional.[49]

---

[49] Boyd adds that a court should not simply presume that the trial judge did not take into account the family's express wishes when rejecting the jury's recommendation to impose a sentence of life without parole. According to Boyd, "this evidence" was a vital part of what was before the trial court at sentencing, and it "could very probably have led the judge to override" the jury's recommendation. However, none of the petitioner's citations to pages in the trial transcript contain any reference to the surviving relatives' opinions about what should happen to Boyd.

To the extent that Boyd's argument is bottomed upon *Payne v. Tennessee*, 501

U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991), as support for the assertion that

"survivors may not comment about appropriate punishment for defendant" (doc. no.

27, at 89-90), he has misread the Court's decision.  The defendant in *Payne* was

convicted of two capital offenses, for the murder of a 28-year-old mother and her 2-

year-old daughter, and one count of assault with intent to commit murder in the first

degree, for the vicious stabbing of the mother's 3-year-old son Nicholas Christopher,

the only survivor.  *Id*. at 811, 111 S. Ct. at 2601.  During the penalty phase of the trial

before the jury, the State of Tennessee presented the testimony of the maternal

grandmother.

> When asked how Nicholas had been affected by the murders of his
> mother and sister, she responded:
>
> > "He cries for his mom.  He doesn't seem to understand why she
> > doesn't come home.  And he cries for his sister Lacie.  He comes
> > to me many times during the week and asks me, Grandmama, do
> > you miss my Lacie.  And I tell him yes.  He says, I'm worried
> > about my Lacie."
>
> In arguing for the death penalty during closing argument, the
> prosecutor commented on the continuing effects of Nicholas'
> experience, stating:
>
> > "But we do know that Nicholas was alive.  And Nicholas was in
> > the same room.  Nicholas was still conscious.  His eyes were
> > open.  He responded to the paramedics.  He was able to follow
> > their directions.  He was able to hold his intestines in as he was

> carried to the ambulance. So he knew what happened to his mother and baby sister."

> "There is nothing you can do to ease the pain of any of the families involved in this case. There is nothing you can do to ease the pain of Bernice or Carl Payne, and that's a tragedy. There is nothing you can do basically to ease the pain of Mr. and Mrs. Zvolanek, and that's a tragedy. They will have to live with it the rest of their lives. There is obviously nothing you can do for Charisse and Lacie Jo. But there is something that you can do for Nicholas.

> "Somewhere down the road Nicholas is going to grow up, hopefully. He's going to want to know what happened. And he is going to know what happened to his baby sister and his mother. He is going to want to know what type of justice was done. He is going to want to know what happened. With your verdict, you will provide the answer."

501 U.S. at 814-15, 111 S. Ct. at 2603 (citations to record omitted).

In affirming Payne's convictions and death sentence, the Supreme Court of Tennessee rejected his contention that the admission of the grandmother's testimony concerning the impact of the crimes upon Nicholas, and the State prosecutor's closing argument, constituted prejudicial violations of his rights under the Eighth Amendment as applied in *Booth v. Maryland*, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), and *South Carolina v. Gathers*, 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed. 2d 876 (1989), respectively. The United States Supreme Court granted *certiorari* for the purpose of "reconsider[ing its] holdings in *Booth* and *Gaithers* that

the Eighth Amendment prohibits a capital sentencing jury from considering 'victim impact' evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family." *Payne*, 50 1 U.S. at 817, 111 S. Ct. at 2604.[50]

In a six-to-three decision authored by Chief Justice Rehnquist, the Court overruled *Booth* and *Gaithers*, saying in part:

> We think the *Booth* Court was wrong in stating that this kind of evidence leads to the arbitrary imposition of the death penalty. In the majority of cases, and in this case, victim impact evidence serves entirely legitimate purposes. In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. *See Darden v. Wainwright*, 477 U.S. 168, 179-183, 106 S. Ct. 2464, 2470-2472, 91 L. Ed. 2d 144 (1986). Courts have always taken into consideration the harm done by the defendant in imposing sentence, and the evidence adduced in this case was illustrative of the harm caused by Payne's double murder.
>
> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the

---

[50] In *Booth*, the Court held by a 5-to-4 vote that the Eighth Amendment prohibits a jury from considering a victim impact statement at the sentencing phase of a capital trial and, in doing so, made clear that the admissibility of such evidence was not to be determined on a case-by-case basis, but that it was *per se* inadmissible in the sentencing phase of a capital case, except to the extent that it "relate[d] directly to the circumstances of the crime." 482 U.S. at 507 n.10, 107 S. Ct. at 2535 n.10. In *Gathers*, the Court extended the *Booth* rule to statements regarding the personal qualities of the victim made by a prosecutor to the sentencing jury.

119

murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Booth*, 482 U.S., at 517, 107 S. Ct. at 2540 (WHITE, J., dissenting) (citation omitted). By turning the victim into a "faceless stranger at the penalty phase of a capital trial," *Gathers*, 490 U.S., at 821, 109 S. Ct. at 2216 (O'CONNOR, J., dissenting), *Booth* deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

The present case is an example of the potential for such unfairness. The capital sentencing jury heard testimony from Payne's girlfriend that they met at church; that he was affectionate, caring, and kind to her children; that he was not an abuser of drugs or alcohol; and that it was inconsistent with his character to have committed the murders. Payne's parents testified that he was a good son, and a clinical psychologist testified that Payne was an extremely polite prisoner and suffered from a low IQ. None of this testimony was related to the circumstances of Payne's brutal crimes. In contrast, the only evidence of the impact of Payne's offenses during the sentencing phase was Nicholas' grandmother's description — in response to a single question — that the child misses his mother and baby sister. Payne argues that the Eighth Amendment commands that the jury's death sentence must be set aside because the jury heard this testimony. But the testimony illustrated quite poignantly some of the harm that Payne's killing had caused; there is nothing unfair about allowing the jury to bear in mind that harm at the same time as it considers the mitigating evidence introduced by the defendant. The Supreme Court of Tennessee in this case obviously felt the unfairness of the rule pronounced by *Booth* when it said: "It is an affront to the civilized members of the human race to say that at sentencing in a capital case, a parade of witnesses may praise the background, character and good deeds of Defendant (as was done in this case), without limitation as to relevancy, but nothing may be said that bears upon the character of, or the harm imposed, upon the victims." 791 S.W.2d, at 19.

In *Gathers*, . . . we extended the holding of *Booth* barring victim

impact evidence to the prosecutor's argument to the jury. Human nature being what it is, capable lawyers trying cases to juries try to convey to the jurors that the people involved in the underlying events are, or were, living human beings, with something to be gained or lost from the jury's verdict. Under the aegis of the Eighth Amendment, we have given the broadest latitude to the defendant to introduce relevant mitigating evidence reflecting on his individual personality, and the defendant's attorney may argue that evidence to the jury. Petitioner's attorney in this case did just that. For the reasons discussed above, we now reject the view — expressed in *Gathers* — that a State may not permit the prosecutor to similarly argue to the jury the human cost of the crime of which the defendant stands convicted. We reaffirm the view expressed by Justice Cardozo in *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S. Ct. 330, 338, 78 L. Ed. 674 (1934): "[J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

   We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, 501 U.S. at 825-27, 111 S. Ct. at 2608-09.

   In short, *Payne* provides no support for Boyd's contentions that "[i]mproper

victim impact evidence permeated [his] trial and sentencing," or that it was error for

the trial court judge to consider a presentence report that contained this sentence:

   The State contends that the family of both victims have suffered great mental and emotional distress at the hands of Glenn Boyd and Robert Milstead and they continue to seek the death penalty in this case.

*Boyd*, 746 So. 2d at 364.  Boyd has offered nothing to establish that the findings of

the Alabama Court of Criminal Appeals were objectively unreasonable.  There is no

error here.

### 12.    Failure to request a transcription of critical portions of the proceedings (Claim H-10 in Petition)

Boyd claims that his attorneys were ineffective because they failed to ensure

that all aspects of his trial were transcribed, including voir dire, jury selection, all

arguments, and bench conferences.  Boyd raised this claim on appeal from the denial

of his Rule 32 petition, and the Alabama Court of Criminal Appeals made the

following findings:

> I.C. and III.
>
> Boyd claims that a complete transcript was not made of his trial
> — i.e., he complains that the following proceedings were not
> transcribed: voir dire examination, jury selection, arguments of counsel,
> and bench conferences.  He also argues that his trial counsel was
> ineffective for failing to require that these proceedings be transcribed.
> He asserts that "[t]he failure to transcribe this record accurately
> prevented Mr. Boyd from receiving a full review of his case and has
> precluded him from adequately litigating such claims as the improper
> denial of strikes for cause and improper elimination of black
> veniremembers by the prosecution." (Appellant's brief at p. 42.)  We
> construe this language as asserting that Boyd was prevented from
> receiving review of possible violations of *Batson v. Kentucky*, 476 U.S.
> 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
>
> . . . .

Boyd argues that because trial counsel failed to ensure that all aspects of his trial were transcribed, appellate counsel was unable to properly raise all issues concerning jury selection, the need for a change of venue, and jury strikes for cause, and the appellate courts were unable to review such issues. Because Boyd's trial counsel also served as his appellate counsel, counsel should have been aware of and alleged specific facts showing prejudice in his petition. However, Boyd's claim is speculative; he has not presented a single specific allegation suggesting that an incomplete record caused him to suffer prejudice . . . . Moreover, a court reporter has never been required to transcribe bench conferences or to record the striking of the jury unless requested to do so. *Ex parte Harris*, 632 So. 2d 543, 545 (Ala. 1993), *aff'd*, 513 U.S. 504, 115 S. Ct. 1031, 130 L. Ed. 2d 1004 (1995); *Ex parte Land*, 678 So. 2d 224, 245 (Ala. 1996). At the time of Boyd's March 1987 trial there was no requirement that the voir dire be transcribed. Section 12-17-275, Ala. Code 1975, did not require transcription of the voir dire. It was not until the implementation of Rule 19.4(a), Ala. R. Crim. P., effective January 1, 1991, that court reporters were required to record the voir dire examination of the jury.

Therefore, this issue has been insufficiently pleaded because the claim is based on mere allegations and conclusions. *See* Rule 32.3 and 32.6(b), Ala. R. Crim. P. Likewise, he has not established that trial counsel's performance was deficient or that he was prejudiced under *Strickland*. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

*Boyd*, 746 So. 2d at 381-82.

Boyd again raises the same claim in this court, arguing that, as a result of his

attorneys' failure to request that a complete transcript of all proceedings be

transcribed, his appellate attorneys were unable to properly raise all issues concerning

jury selection, and the appellate courts were unable to rule on those issues. He adds

that, "[h]ad counsel ensured full transcription, Mr. Boyd would have been able to

fully present his claims on appeal and the courts would have had a complete record

to review on claims involving, *inter alia*, discriminatory jury selection, inadequate

voir dire, the need for a venue change, and strikes for cause, in addition to any issues

raised in the bench conferences."

The Alabama Court of Criminal Appeals correctly identified *Strickland* as

establishing the appropriate standard for reviewing this claim. *Boyd*, 746 So. 2d at

374-76, 384. The court, therefore, did not reach a conclusion different from the

United States Supreme Court on a question of law. Boyd has not cited a decision in

which the Supreme Court, faced with materially indistinguishable facts, reached a

decision different from the state court in his case. Thus, the state court's decision was

not "contrary to" clearly established federal law as determined by the Supreme Court.

Boyd again argues, nevertheless, that the state court's decision was an

unreasonable application of *Strickland*. However, as the Alabama Court of Criminal

Appeals pointed out, there was no requirement at the time of Boyd's trial that *voir*

*dire*, bench conferences, or the striking of juries be transcribed. The appellate court

found that Boyd failed to establish that his attorneys were ineffective for failing to

ensure that the entire trial was transcribed, or that their actions had prejudiced him in

124

any way. The petitioner has offered nothing to contradict this finding. Thus, this court finds that the findings of the state court were not objectively unreasonable.

### 13. Failure to properly object to the use of electrocution in Alabama as cruel and unusual punishment (Claim H-11 in Petition)

Boyd claims that his attorneys were ineffective because they unreasonably failed to object to the use of electrocution as cruel and unusual punishment. Boyd raised this claim on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals entered the following findings:

> I.R. and XXXV.
> Boyd contends that his trial attorneys were ineffective because they did not properly object to the use of electrocution in Alabama as a means of imposing the death penalty as cruel and unusual punishment. According to Boyd:
>
>> "The State of Alabama seeks to execute William Glenn Boyd by subjecting him to torture, suffering and mutilation in its electric chair . . . Mr. Boyd's former counsel failed to raise this issue at any level of the proceedings. Their failure to do so deprived petitioner of competent representation; prejudice lies in the fact that he will be subject to torture if executed in this state's machinery. . . ."
>
> (Appellant's brief at p. 28.)
>
> We agree with the State:
>
>> "Both Alabama state and federal courts have consistently held that death by electrocution does not constitute cruel and unusual punishment. *Sullivan v. Dugger*, 721 F.2d 719 (11th Cir. 1983) . . . *Lindsey v. Smith*, 820 F.2d 1137, 1155 (11th Cir. 1987),

125

> ... *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978), ...
> *Lowenfield v. Phelps*, 817 F.2d 285 (5th Cir. 1987), ... *Ex parte*
> *Harrell*, 470 So. 2d 1309 (Ala. 1985); *Williams v. State*, 627 So.
> 2d 985 (Ala. Cr. App. 1991), ... *Stephens v. State*, 580 So. 2d 11
> (Ala. Cr. App. 1990), ... Jackson v. State, 516 So. 2d 726 (Ala.
> Cr. App. 1985), ... *Wright v. State*, 494 So. 2d 726 (Ala. Cr. App.
> 1985), ..."

Appellee's brief at p. 67.   Moreover, we agree with the State's
contention that "the claim that Alabama utilizes ineffective procedures
and outdated equipment has previously been litigated and rejected.
*Thomas v. Jones*, 742 F. Supp. 598, 602 (S.D. Ala. 1990). *See also Ritter*
*v. Smith*, 568 F. Supp. 1499 (S.D. Ala. 1983), *reasoning adopted and*
*aff'd in relevant part*, 726 F.2d 1505, 1519 (11th Cir.)." (Appellee's
brief at p. 68.)

    Based on the current state of the law, Boyd would not have
prevailed on these claims had his trial counsel objected.   Boyd has not
shown that trial counsel's performance was outside "the wide range of
reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.
Ct. 2052.   Nor has Boyd shown that there is a reasonable probability
that, if trial counsel had made this objection the result of the trial would
have been different.

*Boyd*, 746 So. 2d at 400.

    Boyd again claims in this court that his attorneys were ineffective for failing

to argue that death by electrocution amounts to cruel and unusual punishment.   The

Alabama Court of Criminal Appeals correctly identified *Strickland* as supplying the

appropriate standard for reviewing claims of ineffective assistance of counsel.  *Boyd*,

746 So. 2d at 374-76, 400.   By correctly identifying *Strickland* as the controlling legal

standard, the Alabama Court of Criminal Appeals did not reach a conclusion different

from the United States Supreme Court on a question of law. Further, Boyd has not

cited a decision in which the Supreme Court, faced with materially indistinguishable

facts, reached a decision different from the state court in his case. Thus, the state

court's decision was not "contrary to" clearly established federal law as determined

by the Supreme Court.

In this instance, Boyd makes no argument that the state court's decision was

an unreasonable application of *Strickland,* or that it resulted in a decision which was

based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding. The Alabama Court of Criminal Appeals found that

counsel were not ineffective for failing to raise this argument, because it was clearly

baseless at the time, and petitioner had not shown that he was prejudiced from

counsel's failure to make the claim. This finding was not objectively unreasonable.

Moreover, this claim became moot on July 1, 2002, the effective date of an

amendment to the Code of Alabama that mandates lethal injection as the sole

allowable method for execution in the State, unless a defendant affirmatively elects

execution by electrocution. *See* Ala. Code § 15-18-82.1 (1975) (Supp. 2004).

### 14. Failure to object to excessive security measures in the courtroom that were prejudicial to Boyd (Claim H-12 in Petition)

As discussed in the "Abandoned Claims" section *supra*, petitioner no longer

127

relies upon this claim; accordingly, it will not be addressed.

### 15.   **Failure to prepare adequately for pretrial hearings** (Claim H-13 in Petition)

Boyd claims that his trial attorneys were ineffective because they failed to prepare adequately for pretrial hearings. Specifically, he claims that his counsel: (1) did not effectively argue his motion for change of venue, or present sufficient evidence to support the motion, but instead relied solely on the co-defendant's motion for change of venue; (2) did not adequately pursue his right to individually sequestered *voir dire*; and (3) did not mount a sufficient challenge to the indictment. Boyd also asserts that his attorneys' minimal pretrial litigation was wholly inadequate.[51] Boyd raised this claim on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals entered the following findings:

> I.F.
>
> Boyd contends that trial counsel failed to prepare properly for pretrial hearings. According to Boyd, trial counsel did not effectively argue a motion for a change of venue, did not adequately pursue Boyd's right to individually sequestered voir dire, and did not sufficiently challenge the indictment. Boyd asserts that[,] had trial counsel filed and pursued the appropriate pretrial motions[,] the outcome of his trial would have been different. Boyd has presented no facts to support this

---

[51] In his petition, Boyd also claims that his attorneys did not adequately move to suppress illegally seized evidence, and did not move to preclude improper evidence (such as victim impact testimony). Boyd did not argue these claims in his brief. Assuming that he intended to include them in his discussion, however, the claims are procedurally barred. He did not raise them on appeal from the denial of his Rule 32 petition, and he has offered neither cause nor prejudice to excuse the default.

claim. The claim is based on mere allegations and conclusions. Boyd has not met either the burden imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R. Crim. P. Likewise, Boyd has not shown that trial counsel's performance was deficient or that he was prejudiced by counsel's performance. He has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052, nor has he shown that there is a reasonable probability that, if trial counsel had made these objections in a different manner, the result of the trial would have been different.

*Boyd v. State*, 746 So. 2d at 384.

Boyd again makes the same claim in this court. When addressing this claim on appeal from the denial of Boyd's Rule 32 petition, the Alabama Court of Criminal Appeals correctly identified *Strickland* as supplying the appropriate standard for reviewing claims of ineffective assistance of counsel. *Boyd*, 746 So. 2d at 374-76, 384. Accordingly, the court did not reach a conclusion different from the United States Supreme Court on a question of law. Boyd has not cited a decision in which the Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in his case. Thus, the state court's decision was not "contrary to" clearly established federal law, as determined by the Supreme Court.

Further, Boyd makes no argument that the state appellate court's decision on this issue was an unreasonable application of *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding. This court also finds no error.

### 16. **Allowing improper and prejudicial evidence to be admitted** (Claim H-14 in Petition)

Boyd claims that his attorneys were ineffective because they allowed improper and prejudicial evidence to be admitted at trial. Specifically, he claims that his attorneys either did not object, or did not *adequately* object, to: (1) gruesome photographs of the victims; (2) the prosecutor's elicitation of "other crimes evidence" from an important state witness; and (3) the admission of irrelevant evidence (*e.g.*, the necklace found in Boyd's automobile which, he argues, was not sufficiently linked to Mrs. Blackmon).[52] Boyd raised this claim on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals entered the following findings:

I.I.

Boyd contends that trial counsel allowed improper and prejudicial evidence to be admitted without objection. He argues that trial counsel failed to object to

"certain of the many gruesome photographs of the victims that were unnecessary to the determination of any issue at trial and [that] were introduced solely to inflame the jurors against [Boyd]. . . . They did not object when the prosecutor elicited 'other

---

[52] In his petition, Boyd also claims that his attorneys failed to object to a statement illegally obtained from co-defendant Milstead and used against him. Boyd did not argue this claim in his brief. However, assuming that he intended to include it in his discussion, the claim is procedurally barred because he did not raise this particular claim on appeal from the denial of his Rule 32 petition and he has offered neither cause nor prejudice to excuse the default.

crimes' evidence from an important state witness. They did not object when the other irrelevant evidence was allowed to go to the jury, including evidence regarding a necklace found in Mr. Boyd's car that was never sufficiently tied to Evelyn Blackmon. . . .

"These failures to object, individually and together, undermine confidence in the outcome of petitioner's trial and sentencing and severely prejudiced him. . . ."

(Appellant's brief at p. 17.)

At the Rule 32 hearing, Levinson testified that the victims were identified at trial from photographs. He stated that the parties could have entered into a stipulation as to identity to avoid introducing the photographs. It is pure conjecture and speculation as to whether the State would have agreed to such a stipulation. Boyd has not shown that trial counsel was ineffective in this regard or that the outcome of the trial would have been different had there been a stipulation.

Regarding his allegation about other crimes and the necklace, Boyd has not presented any facts to support these claims. The claims are based on mere assertions and conclusions. Boyd has not specified how any alleged failure to object rendered counsel ineffective. Therefore, Boyd has not met either the burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R. Crim. P. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had objected to alleged improper and prejudicial evidence, the result of the trial would have been different.

*Boyd*, 746 So. 2d at 390-91.

The state court correctly identified *Strickland* as supplying the controlling

standard for reviewing claims of ineffective assistance of counsel. *Boyd*, 746 So. 2d

at 374-76, 391. Accordingly, the court did not reach a conclusion different from the

United States Supreme Court on a question of law. Boyd has not cited a decision in

which the Supreme Court, faced with materially indistinguishable facts, reached a

decision different from the state court in his case. Thus, the state court's decision was

not "contrary to" clearly established federal law as determined by the Supreme Court.

Boyd makes no argument that the state court's decision on this issue was an

unreasonable application of *Strickland,* or that the decision was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceedings. There is no error here.

**17.    Failure to object properly to the imposition of the death penalty in this case pursuant to a pattern evincing racial bias** (Claim H-15 in Petition)

As discussed in the "Abandoned Claims" section *supra*, petitioner has

withdrawn this claim and, therefore, it will not be addressed.

**18.    Failure to object adequately to the absence of meaningful appellate review** (Claim H-16 in Petition)

Boyd claims that his attorneys were ineffective for failing to object adequately

to the absence of meaningful appellate review. He argues that the appellate courts of

Alabama have neither articulated nor followed a system of meaningful appellate

review in death penalty cases, particularly where a jury has first recommended life

132

without parole. He contends that his attorneys did not object to "this inadequate system of review at any level of the process," and did not adequately contest the failure of the appellate courts to consider his motion to supplement the record on appeal. He maintains that counsels' failure cost him a meaningful appeal, reduced the likelihood of reversal of his conviction and death sentence, and otherwise severely prejudiced him. Boyd raised this claim on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals entered the following findings:

I.T.

Boyd contends that his counsel failed to adequately object to the absence of meaningful appellate review of death penalty cases in the state of Alabama. According to Boyd:

". . . the appellate courts of our state have neither articulated nor followed a system of meaningful appellate review in death penalty cases, particularly where a jury has first recommended life without parole. . . . With all due respect, petitioner submits that in his case in particular, the appellate opinions indicate little more than perfunctory recitation of the statutory requirements in affirming sentence . . . .

"Petitioner's counsel did not object to this inadequate system of review at any level of the process. He also did not adequately contest the failure of the appellate courts to consider his motion to supplement the record on appeal. . . . Counsel's failures cost Mr. Boyd a meaningful appeal and the likelihood of reversal of his capital conviction and sentence of death. Petitioner was thus severely prejudiced by counsel's deficient representation. . . ."

(Appellant's brief at page 32-3.)

133

We agree with the State's assertion that "[t]he United States Supreme Court has reviewed Alabama's sentencing statute, and has found it to be constitutional. *Harris v. Alabama*, 513 U.S. 504, 115 S. Ct. 1031, 130 L. Ed. 2d 1004 (1995)." (Appellee's brief at p. 70.) Boyd has not shown that trial counsel's performance in this regard was outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

Boyd contends that trial counsel did not adequately contest the failure of the appellate courts to consider his motion to supplement the record on appeal. The basis of this motion was the omission from the record on direct appeal of that portion of the record showing trial counsel's objection to the trial court's refusal to give additional instructions to the jury on murder and capital murder. On direct appeal we stated that the record did not reflect that the issue had been properly preserved for appellate review. However, in addition, we stated:

> "Furthermore, we do not find the trial judge's refusal to give additional instructions to the jury on murder and capital murder to be error, since the trial judge thoroughly instructed the jury on these matters in his oral charge to them. There is no basis of error to reversal shown here."

542 So. 2d at 1259. Boyd would not have prevailed on this claim had trial counsel objected. Thus Boyd has not shown that he was prejudiced by trial counsel's performance. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

Boyd also incorporates his argument in issue XXII in his brief as factual support for this claim. Boyd argues that the trial court should have granted his requests for a continuance: when codefendant Robert Milstead suddenly pleaded guilty and agreed to testify against Boyd; when the state ended its case; and before the commencement of the guilt phase. According to Boyd, these errors impaired his defense. Boyd

134

concedes that counsel sought a continuance at these times but the trial court denied the request. Trial counsel is not ineffective for having an objection overruled or a motion denied. Boyd has not shown that counsel's performance was deficient or that he was prejudiced by the deficient performance.

Boyd also has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S. Ct. 2052, or that there is a reasonable probability that, if trial counsel had made this objection the result of the trial would have been different.

*Boyd*, 746 So. 2d at 401-402.

In deciding this claim on appeal from the denial of Boyd's Rule 32 petition, the state court correctly identified *Strickland* as supplying the controlling legal standard of review. *Boyd*, 746 So. 2d at 374-76; 401-02. Thus, the state appellate court applied the correct legal rule and, in doing so, did not reach a conclusion different from the United States Supreme Court on a question of law. Boyd has not cited a decision in which the Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in his case. For these reasons, the state court's decision was not "contrary to" clearly established federal law as determined by the Supreme Court.

Boyd makes no argument that the state court's decision on this issue was an unreasonable application of *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.

### 19.   The State's failure to appoint counsel with sufficient criminal and capital litigation experience denied petitioner his right to a fair trial (Claim H-17 in Petition)

Boyd claims that his attorneys were too inexperienced to try a capital case, and

thereby provided him ineffective assistance.  He raised this claim on appeal from the

denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals found:

> PRECLUDED SUBSTANTIVE CLAIMS
> The following claims are procedurally precluded because they could have been, but were not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R. Crim. P.  The Roman numerals correspond to the number assigned that argument in Boyd's brief to this court.
>
> II. Boyd's counsel was too inexperienced to try a capital case.

*Boyd*, 746 So. 2d at 404.  Thus, is precluded from raising this claim in this court,

because the state court held that the claim was procedurally barred — a point that will

be more fully discussed *infra,* in the Procedural Default section of this Opinion.

### C.   Ineffective Assistance of Appellate Counsel (Claim I in Petition)

Boyd claims that the attorney who represented him on direct appeal, Steve

Levinson, did not provide effective assistance of counsel.[53]  He states that it is

---

[53] *See supra* note 11 and *Boyd v. State*, 746 So. 2d 364, 403 (Ala. Crim. App. 1999) ("During the appeal process, [the second attorney appointed to represent Boyd on direct appeal, Michael] Allsup was suspended from the practice of law because he failed to fulfill continuing legal education requirements of the Alabama State Bar.  Levinson prepared Boyd's appeal.").

"beyond dispute that [my] appellate lawyer failed to raise numerous meritorious

issues before the Alabama courts on direct appeal — indeed, the State of Alabama

wishes to bar many claims of error from this Court's consideration on that ground

alone." Doc. 27 at 98. In support of this claim, Boyd tenders a list of appellate

counsel's alleged inadequacies — the majority of which he previously raised in

support of his various claims that trial counsel were ineffective:

• Mr. Levinson had never tried a capital case before and had no training
in this specialized area of the law;

• Counsel failed to supplement the record properly to preserve an
objection to the failure to answer the jury's question about the
distinction between murder and capital murder;

• Counsel did not raise on appeal the denial of Boyd's right to be free
from double jeopardy in the division of a single offense into eight
different crimes;

• Counsel did not challenge on appeal the failure to provide a complete
transcription of all voir dire and other aspects of the trial;

• Counsel did not raise the state's discriminatory use of peremptory
challenges;

• Counsel did not challenge on appeal a variety of improper evidence
and argument presented by the prosecution;

• Counsel did not challenge on appeal the excessive security measures
during trial;

• Counsel did not challenge on appeal the use of Mr. Milstead's
unconstitutional statements against Boyd, or the use of Boyd's own

137

unconstitutionally obtained statements;

• Counsel did not challenge on appeal the absence of proper corroborating evidence or the improper instruction on corroboration or the other flawed charges, including the charge given during deliberations and the prejudicial verdict form;

• Counsel did not raise on appeal the trial court order sending Boyd to Alabama's Taylor-Hardin Secure Medical Facility for mental evaluation as a substitute for expert defense assistance or the failure of the trial court to provide other funds for expert assistance;

• Counsel did not raise on appeal the failure of the trial court to provide individual sequestered voir dire, or to transfer venue;

• Counsel did not challenge on appeal inadmissible evidence such as gruesome photos, testimony about other crimes, and victim impact;

• Counsel did not challenge on appeal interference with Boyd's presentation of his case, including the trial court's insistence on rushing Boyd through trial and sentencing;

• Counsel did not challenge the insufficiency of the evidence on various grounds;

• Counsel did not challenge the improprieties in the presentence investigation report;

• Counsel did not challenge the use of improperly obtained prior convictions;

• Counsel did not challenge the failure to find mitigation, and the reliance on invalid aggravating factors;

• Counsel did not challenge the securing of a death sentence pursuant to a pattern of racial bias;

• Counsel did not challenge the state's improper arguments;

• Counsel did not challenge the trial judge's override of the jury's advisory verdict;

• Counsel did not challenge the inadequacies of Alabama's system of appellate review and the poor training and compensation provided to capital defense counsel in Alabama; and,

• Counsel did not raise the unconstitutional use of Alabama's electric chair.

Boyd raised this claim, consisting of numerous sub-parts, on appeal from the

denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals entered

the following findings:

I.U.

Boyd contends that appellate counsel failed to provide effective assistance of counsel on appeal to the Alabama Court of Criminal Appeals and the Alabama Supreme Court. Boyd was represented on appeal by Steve Levinson, one of his trial counsel. Boyd's argument consists of a mere recitation of issues he says appellate counsel failed to pursue on direct appeal and the allegation that appellate counsel was too inexperienced to effectively handle Boyd's case.

This claim is barred because it has been insufficiently pleaded. The claim is based on mere allegations and conclusions. Therefore, Boyd has not met either his burden of pleading under Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R. Crim. P. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made objections, the result of the trial would have been different.

139

Moreover, § 13A-5-54, Ala. Code 1975, provides:

"Each person indicted for an offense under the provisions of this article who is not able to afford legal counsel must be provided with court appointed counsel having no less than five years' prior experience in the active practice of criminal law."

Levinson testified at the Rule 32 hearing that he was licensed to practice law in 1978 and that he was appointed to Boyd's case in 1986. He stated that he was a sole practitioner who had never tried a murder case or a capital murder case, but that his practice included criminal work. He stated that Grant Paris was appointed as co-counsel to Levinson. Paris had the requisite five years experience in criminal law, but had not handled a capital case before. Mannon Bankston was also appointed, but only to assist Levinson and Paris because he did not have the required five years experience in criminal work. Vol.16, R. 102-03. Levinson and Michael Allsup were appointed to represent Boyd on appeal. During the appeal process, Allsup was suspended from the practice of law because he failed to fulfill continuing legal education requirements of the Alabama State Bar. Levinson prepared Boyd's appeal. We see no error with Boyd's representation at trial or on appeal.

At the Rule 32 hearing, Levinson testified that on appeal he "focused on the issues that [he] thought were most beneficial to [Boyd]." (Vol.16, R. 138.) We agree with the State's assertion that the United States Supreme Court has held that this practice is acceptable.

"[E]xperienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed."

*Jones v. Barnes*, 463 U.S. 745, 746, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

140

As stated above, this issue is insufficiently pleaded.

*Boyd v. State*, 746 So. 2d at 402-03.

Boyd again asserts the same claims in his § 2254 habeas petition. In deciding this claim on appeal from the denial of Boyd's Rule 32 petition, the state court correctly identified *Strickland* as supplying the controlling standard for reviewing claims of ineffective assistance of appellate counsel. *Boyd*, 746 So. 2d at 374-76, 402. Thus, the court applied the correct legal rule, and did not reach a conclusion different from the United States Supreme Court on a question of law. Boyd has not cited a decision in which the Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in his case. Thus, the state court's decision was not "contrary to" clearly established federal law as determined by the Supreme Court.

Further, Boyd makes no argument that the state court's decision on this issue (or its numerous sub–parts) was an unreasonable application of *Strickland,* or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The findings of the Alabama Court of Criminal Appeals were not objectively unreasonable.

## D.    **Procedurally Defaulted Claims**

Respondents argue that this court may not review the merits of many of

petitioner's claims, because they are barred by the doctrine of "procedural default."

The Eleventh Circuit explained that doctrine in *Johnson v. Singletary*, 938 F.2d 1166

(11th Cir. 1991), in the following manner:

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted. Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. *See id.* at 262, 109 S. Ct. at 1042-43; *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988). The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, *see Presnell v. Kemp*, 835 F.2d 1567, 1578-79 (11th Cir. 1988), *cert. denied*, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991).

*Johnson v. Singletary*, 938 F.2d at 1173. Thus, if a claim previously has been

presented in some form to a state court, a federal habeas court may refuse to hear the

same claim, but only if the last state court rendering a judgment in the case (a) states

"clearly and expressly" that its judgment rests on a state procedural bar which (b)

"provides an adequate and independent state ground for denying relief." *Harris v.

Reed,* 489 U.S. at 262-63, 109 S. Ct. at 1043.

142

There are only two ways for a habeas petitioner to overcome a procedural

default and receive federal review of claims not properly presented in the state court

system.    First, under the "cause and prejudice" exception, a petitioner must

"demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546,

2565, 115 L. Ed. 2d 640 (1991). The "cause *and* prejudice" exception is framed in

the conjunctive.   Therefore, a petitioner must prove *both* cause *and* prejudice to

excuse his procedural default.   The United States Supreme Court elaborated the

"cause" prong of the standard in *Amadeo v. Zant*, 486 U.S. 214, 108 S. Ct. 1771, 100

L. Ed. 2d 249 (1988), saying:

> In *Wainwright v. Sykes*, 433 U.S. 72 (1977), this Court adopted
> the "cause and prejudice" requirement of *Francis v. Henderson*, [425
> U.S. 536 (1976)], for all petitioners seeking federal habeas relief on
> constitutional claims defaulted in state court. The *Sykes* Court did not
> elaborate upon this requirement, but rather left open "for resolution in
> future decisions the precise definition of the 'cause'-and-'prejudice'
> standard." 433 U.S. at 87, 53 L. Ed. 2d 594, 97 S. Ct. 2497. Although
> more recent decisions likewise have not attempted to establish
> conclusively the contours of the standard, they offer some helpful
> guidance on the question of cause. In *Reed v. Ross*, 468 U.S. 1, 82 L.
> Ed. 2d 1, 104 S. Ct. 2901 (1984), the Court explained that although a
> "tactical" or "intentional" decision to forgo a procedural opportunity
> normally cannot constitute cause, *id.,* at 13-14, 82 L. Ed. 2d 1, 104 S. Ct.
> 2901, "the failure of counsel to raise a constitutional issue reasonably
> unknown to him is one situation in which the [cause] requirement is
> met." *Id.,* at 14, 82 L. Ed. 2d 1, 104 S. Ct. 2901. The Court later
> elaborated upon *Ross* and stated that "the existence of cause for a

143

> procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). We explained that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . would constitute cause under this standard." *Ibid.*

*Amadeo v. Zant*, 486 U.S. at 221-22, 108 S. Ct. at 1776. With regard to the "prejudice" prong of this exception, a habeas petitioner must demonstrate that he was actually prejudiced: in other words, the petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595, 71 L. Ed. 2d 1584 (1982) (emphasis in original).

The second manner in which a habeas petitioner may overcome a state-law procedural default is under the "fundamental miscarriage of justice" exception: that is, a petitioner must "demonstrate a sufficient probability that [a federal court's] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000). Stated differently, this exception allows a federal habeas court to consider a procedurally defaulted claim in the absence of cause if, but only if, a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually

innocent," or if the petitioner shows "by clear and convincing evidence that[,] but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Schlup v. Delo*, 513 U.S. 298, 323-27 & n.44, 115 S. Ct. 851, 865-67 & n.44, 130 L. Ed. 2d 808 (1995) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 335, 112 S. Ct. 2514, 2516-17, 120 L. Ed. 2d 269 (1992)); *see also, e.g., Smith v. Murray*, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 2667-68, 91 L. Ed. 2d 434 (1986) (quoting *Engle v. Isaac* , 456 U.S.107, 135, 102 S. Ct. 1558, 1575-76, 71 L. Ed. 2d 783, and, *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649-50, 91 L. Ed. 2d 397 (1986)). This exception applies only in a "narrow class of cases." *Schlup*, 513 U.S. at 315, 115 S. Ct. at 861 (internal quotation marks and citation omitted).

Upon thorough review of Boyd's filings, the court finds that he has wholly failed to satisfy the requirements of the "fundamental miscarriage of justice" exception to the procedural default doctrine. He has not made the showing of "actual innocence" necessary to circumvent the procedural default of any of the following claims in his habeas petition.[54] Accordingly, the subsequent discussion will address

---

[54] The petitioner must show "actual innocence" either as to the crime of conviction, or to his eligibility for the death penalty. As to his "actual innocence" of the crime, such a showing requires the petitioner "to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 323-27, 115 S. Ct. at 865. As to "actual innocence" regarding his eligibility for the death penalty, a petitioner must show by clear and convincing evidence that, but for a constitutional error at trial, no reasonable juror would have found him eligible for the death penalty under state law.

145

Boyd's claims only in relation to the "cause and prejudice" exception to the procedural default doctrine.

## 1. False evidence presented by Robert Milstead (Claim C in Petition)

Boyd argues that the prosecution's key witness, co-defendant Robert Milstead, presented evidence that the state's attorneys either knew, or should have known, was false, thus rendering Boyd's conviction and death sentence unreliable.[55] As support for this claim, petitioner presents an affidavit from Milstead, notarized on October 4, 1994, in which Milstead avers that he perjured himself at Boyd's trial. PCR Vol. 4 at C-748-50. Milstead gave several examples of the true facts, in contradiction of his testimony at trial: (1) Boyd was not the ringleader; (2) he (Milstead) planned and carried out many of the acts he attributed to petitioner at trial; (3) Boyd shot Mrs. Evelyn Blackmon solely to end her suffering; and (4) Boyd did not say he wanted "a piece of that" before Mrs. Blackmon died. *Id.* Milstead attests that he felt compelled to testify falsely because he was young, wanted to escape the death penalty, and "understood that [he] was expected to testify against William Glenn Boyd" in order

---

[55] Although Boyd makes a prosecutorial misconduct claim in Claim T of his federal petition, he did not include his argument about Milstead's testimony in that claim. Rather, Boyd seems to have raised it as a separate claim of prosecutorial misconduct in Claim C. Nevertheless, to the extent that Boyd might have intended to raise the claim as a newly discovered evidence claim, as he did on appeal from the denial of his Rule 32 petition in Claim XXXIX-A, Tab P-54 at 122-24, the claim is procedurally barred, because the Alabama Court of Criminal Appeals held that the issue was not preserved for review since Boyd raised the claim for the first time on appeal. Boyd has offered nothing to excuse the procedural default of this claim.

to convict Boyd of a capital offense "and insure that [Boyd] would receive the death penalty." PCR Vol. 4 at C-748-50. Milstead explains that he testified Boyd made a sexual reference to Boyd wanting "a piece of" Mrs. Blackmon before she died, "because [he] was given the impression by the district attorney's office that [he] should make it look as bad as possible for Glenn and say things of that nature." *Id.*

Boyd raised this claim in two different forms during post-conviction proceedings in the state court system. In Claim T of his second amended Rule 32 petition, he raised the claim as an example of prosecutorial misconduct. Tab P-45 at 23-24. On appeal from the denial of his Rule 32 petition, Boyd raised the claim in two ways: as one for prosecutorial misconduct in Claim XX-D, Tab P-54 at 77-78; and, as one for newly discovered evidence in Claim XXXIX-A, Tab P-54 at 122-24.

The Alabama Court of Criminal Appeals ruled that the prosecutorial misconduct claim was procedurally precluded because it could have been, but was not, raised at trial or on direct appeal pursuant to Rules 32.2(a)(3), and (5), Ala. R. Crim. P. *Boyd v. State*, 746 So. 2d at 404. That court also ruled that the "discovery of perjured testimony" claim was procedurally precluded, because it was neither presented to the trial court, nor properly "pleaded as newly discovered facts." *Id.* at 408-409. The appellate court's decision rests upon procedural rules that are adequate and independent state grounds for denying relief. Thus, petitioner's claims are

147

procedurally defaulted; and, unless Boyd can demonstrate both cause for, and prejudice as a result of, the default, the claims are barred from review by this court.

As cause to excuse the default of this claim, Boyd argues that he could not have known at trial or on direct appeal that Milstead was perjuring himself, but that the prosecutor was aware of the perjury. However, Boyd has not suggested how the state district attorney knew or should have known that Milstead was committing perjury. There is nothing in Milstead's affidavit to indicate that he informed the prosecution that he intended to perjure himself at trial, or that the prosecution had any reason to believe that Milstead would commit perjury. Boyd specifically draws the court's attention to Milstead's statement that he "was given the impression by the district attorney's office that [he] should make it look as bad as possible for Glenn[,]" but that statement certainly does not establish that the state district attorney instructed (or expected) Milstead to commit perjury. Thus, Boyd's claim that the prosecution knew or should have known that Milstead's trial testimony was not truthful is speculative, and would not provide the basis for habeas relief even if the claim were not barred by procedural default. *See Herrera v. Collins,* 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993); *Brownlee v. Haley,* 306 F.3d 1043, 1065 (11th Cir. 2002).

148

## 2. At the time of Boyd's trial, the trial judge was himself committing crimes (Claim D in Petition)

Boyd claims that, at the time of his trial, Judge Quattlebaum was himself committing crimes, and thus sentenced Boyd to death to curry favor with the state's prosecutor, presumably so the prosecutor would either be less inclined to seek an indictment of the judge, or more lenient if he were prosecuted for and convicted of a crime. The Alabama Court of Criminal Appeals held that this claim was precluded because it: was not sufficiently pleaded in the second amended complaint of Boyd's Rule 32 petition; did not present newly discovered facts; and was subject to preclusion pursuant to the Alabama Rules of Criminal Procedure. *Boyd v. State*, 746 So. 2d at 409. The appellate court's decision rests upon procedural rules that are independent and adequate grounds for denying relief under state law. Thus, petitioner's claims are barred from review in this court. Moreover, petitioner has provided no cause to excuse the procedural default. Finally, even if the claim were not procedurally barred from review, the claim would be due to be denied because it is tenuous, conclusory, and based upon unfounded speculation.

## 3. Verdict tainted by improper conduct of jurors (Claim E in Petition)

Boyd alleges that the guilty verdict in his case was tainted by improper conduct on the part of some jurors. One of the jurors to whom he refers was an alternate who

149

did not ultimately sit on the jury, but who did inform sitting jurors of his personal

knowledge of the case because, as a member of the volunteer fire department, he had

been involved in the search for the victims, and was privy to a great deal of evidence

surrounding the crime scenes. Plaintiff contends a second juror used a pocket

dictionary to assist her in understanding certain terminology.

The Alabama Court of Criminal Appeals affirmed the decision of Judge Laird,

who found the claim procedurally barred pursuant to Rule 32.2(a), and subject to

summary dismissal pursuant to Rule 32.7(d).

> These issues were not pleaded [in the Rule 32 petition] as newly
> discovered facts and were therefore subject to the procedural bar
> pleaded by the State and accepted by the circuit court. The circuit
> court's ruling finding this claim precluded on procedural grounds was
> not error.

*Boyd*, 746 So. 2d at 406-07. The appellate court's decision rests upon state

procedural rules that are adequate and independent grounds for denying relief. Thus,

petitioner's claims are barred from review in this court.

### 4. The prosecution withheld exculpatory evidence about Robert Milstead (Claim F in Petition)

Petitioner next claims that the prosecution withheld from defense counsel a

mental health record pertaining to (and a witness statement concerning) co-defendant

Milstead, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.

150

2d 215 (1963). Boyd contends that, if this information had been made known to him

before trial, the use of it could have convinced the jury and judge that Milstead, not

petitioner, was the volatile, dangerous perpetrator of the crimes committed against the

Blackmons.

When Boyd raised this same claim on appeal from the denial of his Rule 32

petition, the Alabama Court of Criminal Appeals held that it was procedurally barred.

> The written order denying this claim stated that it was precluded
> under Rule 32.2(a) and was subject to summary dismissal under Rule
> 32.7(d), Ala. R. Crim. P., because it was not sufficiently specific. (Vol.3,
> C.R.498-99.)  Boyd did not plead in his petition that this claim was
> based on newly discovered evidence and he did not allege how the
> evidence was exculpatory.  Based on the pleading before the court, we
> find no error with this ruling.  Therefore, the trial court correctly ruled
> that this claim was precluded and it was insufficiently pleaded to entitle
> Boyd to relief. *See*, XXXVII. We note that at the prehearing conference
> when the circuit court refused to hear this claim defense counsel stated
> that "Rule 32 does recognize newly discovered evidence as a claim that
> is cognizable under Rule 32." (Vol.16, R. 93.)  However, prior to this
> time, the claim had not been couched as newly discovered evidence.

*Boyd*, 746 So. 2d at 407-08.   The state appellate court's decision rests upon

procedural rules that are adequate and independent under state law for denying relief.

Thus, the claim is barred from review in this court.  Boyd does argue, however, that

the state's representation that it had fully complied with its discovery obligations

constitutes sufficient cause to excuse the default of this claim.  Even assuming that

he can show cause to excuse the default of this claim, Boyd cannot show the jury

would have found him not guilty of a capital offense, or that the trial judge would not have imposed the death penalty, if this information had been disclosed prior to trial.

Boyd maintains that the lunacy commission report — in which staff at the Taylor-Hardin Secure Medical Facility opined that Milstead had an "Anti-Social Personality Disorder,"[56] but nevertheless was "totally in touch with reality" and was not suffering from any mental disease or defect that might have reduced his relative culpability — would have been used to impeach Milstead's testimony, and to show that he was not the innocent young follower he made himself out to be when testifying at trial. Boyd offers nothing to indicate how he arrived at the conclusion that this information would have been exculpatory.

Boyd also asserts that, in addition to the lunacy commission report, state investigators had information that a man named Anthony Gathye, a banker who attempted to collect a debt from Boyd, had seen Milstead and Boyd together shortly after the crimes. Gathye had been interviewed by the police at the time about his impressions and knowledge. Boyd contends that Gathye said Milstead was so irritated and angry at Gathye's presence that he (Boyd) suggested Gathye leave. Petitioner claims that Gathye's commentary would have been critical in establishing that, between Boyd and Milstead, it was Milstead who was the angry, impulsive

---

[56] Actually, the Lunacy Commission Summary Report stated that Milstead had been diagnosed with "Adult Antisocial Behavior."

individual. This court finds Boyd's reasoning to be quite incredible. Boyd took Gathye's deposition during the Rule 32 proceedings. PCR Supp. 1 of 6 at C-39-65. Gathye testified that, when he was at Boyd's house collecting on a debt Boyd owed, Boyd walked outside with Gathye, in Milstead's presence, and paid Gathye a sum of money. Milstead was very angry at Gathye, and told Gathye to leave. Boyd then told Milstead to go back into the house, and Milstead apparently complied. PCR Supp. 1 of 6 at C-51-59.

Boyd cannot make a rational argument that Gathye's deposition testimony was as damaging to Milstead as Boyd would have this court believe. In fact, it would be very tenuous to suggest that the testimony offered by Gathye would have affected the outcome of the trial. Although Gathye did testify that he saw both Boyd and Milstead soon after the murders, and that Milstead was irritated, that evidence does nothing to establish which of the two was more culpable in the crimes. Furthermore, the fact that Milstead was angry on that occasion would not necessarily establish that he was an "angry, impulsive actor," while Boyd was not.

Boyd has failed to show that the information allegedly withheld by the state actually and substantially prejudiced him, or infecting his entire trial with error of constitutional dimensions. Thus, the default of this claim cannot be excused.

153

### 5.   **Improper victim impact evidence** (Claim G in Petition)

Boyd alleges that before imposing a death sentence, the trial court considered a presentence report in which it was written that the families of the victims "suffered great mental and emotional distress at the hands of Glenn Boyd and Robert Milstead and they continue to seek the death penalty in this case." CR 386. In reviewing this claim on appeal from the denial of Boyd's Rule 32 petition, the Alabama Court of Criminal Appeals rejected it, among other reasons, because it could have been, but was not, raised at the trial court level and on direct appeal pursuant to Rules 32.2(a)(3) and (a)(5), Ala. R. Crim. P. *Boyd*, 746 So. 2d at 383.

The appellate court's decision rests upon procedural rules that are adequate and independent state grounds for denying relief. Thus, the claim is barred from this court's review. There is no cause to excuse the default on the basis of ineffective assistance of trial counsel, because this court previously determined in Part IV(B)(11) *supra* that the ineffective assistance of counsel claim attached to this issue (Claim H-9 in Petition) is without merit.

### 6.   **Alabama's capital compensation scheme compromised the performance of Boyd's attorneys** (Claim H-1 in Petition)

Boyd claims that he was denied effective assistance of counsel because his attorneys were not compensated adequately for their work and, thus, lacked both the

incentive and financial ability to properly prepare his case for trial. Boyd raised this

claim in his Rule 32 petition, and the Alabama Court of Criminal Appeals held

(among other reasons for rejecting it) that the claim was procedurally barred by Rules

32.2(a)(3) and (a)(5) of the Alabama Rules of Criminal Procedure:

> Although included as a claim alleging ineffective assistance of counsel, this claim does not challenge the effectiveness of counsel. Boyd argues that because of low funding counsel had no incentive to perform. Boyd does not allege an instance where counsel did not perform effectively because of funding. Therefore, this claim is precluded from review in a Rule 32 petition because it could have been, but was not, raised and addressed at trial and on direct appeal. . . .
>
> However, to the extent, if any, that the argument can be construed as asserting that Boyd's counsel was ineffective because of limited funds, we conclude that there has been no specific assertion that Boyd's counsel failed to provide effective assistance due to the lack of State provided funds. Therefore, Boyd has not met either his burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R. Crim. P. Boyd has not shown that because of low funding trial counsel's performance was outside "the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S. Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had been paid more for defending Boyd, the result of the trial would have been different.

*Boyd*, 746 So. 2d at 403. The appellate court's decision rests upon procedural rules

that are adequate and independent grounds for denying relief under state law, and the

claim is barred from review here because Boyd has not established cause for the

default, nor prejudice as a result.

**7.   Boyd's trial attorneys were too inexperienced to try a capital case**
(Claim H-17 in Petition)

Boyd claims that his attorneys were too inexperienced to try a capital case, and

that he therefore received ineffective assistance of counsel.  Boyd raised this claim

on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal

Appeals found that it was barred for the same reasons discussed above:  it could have

been, "but [was] not, raised and addressed at trial and on direct appeal. Rules

32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

Even so, Boyd was represented by one of the same attorneys both at trial and

on direct appeal.[57]  For that reason, it was not necessary under Alabama law that he

raise the issue of inexperienced counsel on direct appeal.  *See*, *e.g.*, *Golston v.*

*Alabama,* 947 F.2d 910 (11th Cir. 1991).  This procedural bar, therefore, is not

independent and adequate under state law.  It is, nevertheless, without merit.

An attorney's experience, or his lack thereof, "does not establish *ipso facto* that

he was ineffective.  When considering an ineffective assistance of counsel claim, the

attorney's *actual performance* is examined, rather than his or her experience, which

is an indicator of the attorney's likely performance." *Kandies v. Polk*, 385 F.3d 457,

---

[57] *See supra* note 11 and *Boyd v. State*, 746 So. 2d 364, 403 (Ala. Crim. App. 1999) ("During
the appeal process, [the second attorney appointed to represent Boyd on direct appeal, Michael]
Allsup was suspended from the practice of law because he failed to fulfill continuing legal education
requirements of the Alabama State Bar.  Levinson [therefore] prepared Boyd's appeal [alone].").

469-470 (4th Cir. 2004) (Traxler, J., concurring) (emphasis added); *see also*, *Cooks v. Ward*, 165 F.3d 1283, 1293 n.5 (10th Cir. 1998) ("When considering an ineffective assistance of counsel claim, this court must focus on the attorney's performance, not his experience. An attorney with little or no prior experience certainly can render effective assistance.").

The Alabama Court of Criminal Appeals addressed each of Boyd's ineffective assistance of trial and appellate counsel claims, and found all to be lacking in merit. The Court properly evaluated attorney *performance* when doing so. Further, this court has independently evaluated Boyd's ineffective assistance of counsel claims and, like the state courts, found each to be without merit. For those reasons, this claim is rejected.

## 8.    Aggravating circumstances inapplicable to Boyd (Claim L in Petition)

Boyd claims that his death sentence rests on aggravating circumstances that are

not applicable to the facts of his case. He contends that:

The finding of kidnapping and robbery was based on the splitting . . . of a single offense into numerous offenses in violation of Mr. Boyd's right against double jeopardy. Additionally, the use of the felonies as the basis for aggravation amounted to a double-counting of those felonies in order to obtain a death sentence.

Most critically, it was error . . . for the court to find the heinous, atrocious or cruel aggravating factor. The aggravating circumstance has not been limited in its application as required by Supreme Court

157

precedent. Despite the very troubling aspects of this crime, the state presented no evidence that the defendants in this case tortured the Blackmons or "enjoyed" inflicting pain. These findings are prerequisites in Alabama for establishing the existence of § 13A-5-49(8).

Furthermore, the Alabama courts have contended that the heinous, atrocious or cruel factor is applied to an "offense" rather than an individual. Yet the circumstance was not found in the companion case of codefendant Robert Milstead. Moreover, sentencing Mr. Boyd to death through this circumstance on the basis of acts committed by the codefendant runs afoul of the right to an individualized sentencing guaranteed by the Eighth and Fourteenth Amendments.

Doc. no. 1, at 37-38; *see also* doc. no. 27, at 111-13.

Boyd raised this claim on appeal from the denial of his Rule 32 petition, and

the Alabama Court of Criminal Appeals held that it was procedurally barred, "because

[it] could have been, but w[as] not, raised and addressed at trial and on direct appeal.

Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and

independent grounds for denying relief under state law. The claim thus is barred from

review here. Boyd has not established cause to excuse the default on the basis of

ineffective assistance of counsel, because this court previously determined that the

ineffective assistance of counsel claim attached to this issue (raised as part of Claim

B in Petition) is without merit.

158

**9.    Trial court improperly overrode the jury's recommendation for sentence of life without parole** (Claim M in Petition)

Boyd argues that it was improper for the trial judge to impose a death sentence after the jury recommended that he be sentenced to life without parole.  He stresses that Alabama has no mechanism to ensure that defendants given jury life-without-parole verdicts are treated alike, and that the Alabama appellate courts have developed no mechanism for determining when a judicial override is appropriate in particular cases.  When Boyd raised this claim on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals held that the claim was procedurally barred, "because [it] could have been, but w[as] not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for relief under state law.  The claim accordingly is barred from review here.  There is no cause to excuse default on the basis of ineffective assistance of counsel, since this court already has determined that the ineffective assistance of counsel claim attached to this issue (raised as part of Claim B in Petition) is without merit.

159

## 10. Refusal to find presence of nonstatutory mitigating circumstances (Claim N in Petition)

Boyd claims that the trial court erred in refusing to find the presence of nonstatutory mitigating circumstances based on the evidence before the court. The petitioner raised this claim on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals held that the claim was procedurally barred because it "could have been, but w[as] not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law. Thus, petitioner's claim is barred from review in this court. Again, however, Boyd attempts to blame the default of this claim on the alleged ineffectiveness of his attorneys. However, the ineffectiveness claim with regard to this issue is itself procedurally defaulted.[58] Thus, this claim is procedurally barred.

## 11. Lack of funding for expert assistance (Claim O in Petition)

Boyd contends that he was denied due process, equal protection, a fair trial, and a fair sentencing by the trial court's refusal to provide funds for the services of a

---

[58] Boyd appears to have raised this claim in Claim 1-x of his second amended Rule 32 petition. PCR Vol. 2 at C-393; Tab P-45 at 7. However, he did not raise the claim on appeal from the denial of that petition. Thus, the claim is procedurally defaulted pursuant to *Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990).

160

mental health professional and an expert in public opinion polling to assess the effects of allegedly prejudicial pretrial publicity on prospective jurors. Boyd raised this claim on appeal from the denial of his Rule 32 petition, and the Alabama Court of Criminal Appeals held that the claim was procedurally barred because it "could have been, but w[as] not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law and, thus, the claim is barred from review here. There is no cause to excuse default on the basis of ineffective assistance of counsel, because this court already has determined that the ineffective assistance claim attached to this issue (Claim H-2 in Petition) is without merit.

## 12. Deprivation of independent psychiatric assistance (Claim P in Petition)

Boyd claims that he was deprived of independent psychiatric assistance: the trial judge denied his motion for an independent expert and, instead, sent him to the State of Alabama's Taylor-Hardin Secure Medical Facility for evaluation, against his will, and over his lawyers' objections. Boyd contends that this act crippled his ability to present a defense at all phases of the trial. When Boyd raised this claim on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals held that the claim was procedurally barred, because it "could have been, but w[as] not,

161

raised on direct appeal. Rule 32.2(a)(5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law and, thus, the claim is barred from review by this court. There is no cause to excuse the default on the basis of ineffective assistance of counsel, because this court already has determined that the ineffective assistance claim attached to this issue (raised as part of Claim I in Petition) is without merit.

### 13. Prosecution's racially discriminatory use of peremptory challenges
(Claim Q in Petition)

Boyd asserts that he was deprived of a fair trial by the State District Attorney's racially discriminatory use of peremptory challenges. He claims the State used five of its peremptory strikes against the six black veniremembers remaining in the pool after challenges for cause, but offered no justification for the wholly disproportionate pattern of strikes. When Boyd raised this claim on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals held that the claim was procedurally barred, "because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 382.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law. Thus, the claim is barred

162

from review here. There is no cause to excuse Boyd's default on the basis of ineffective assistance of counsel, because this court previously determined that the ineffective assistance claim attached to this issue (Claim H-4 in Petition) is without merit.

**14.    Inadequate and improper jury instructions** (Claim R in Petition)

Boyd asserts that the two capital offenses arising from the murder of Fred and Evelyn Blackmon were improperly divided into eight counts, and so charged to the jury. He maintains that these counts were repetitive, and some did not even represent real crimes under Alabama law. He adds that the court failed to define the term "intent to terrorize," even though the jury was instructed on two counts of "kidnapping with intent to terrorize"; that the court's instructions on the concepts of "complicity" and "aiding and abetting" were erroneous; that the court's instructions on reasonable doubt were confusing; that the court failed to charge the jury on felony murder; that the court failed to properly instruct the jury on the elements of murder; and, that the court's instructions on lesser included offenses were inadequate. When Boyd raised these claims on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals held that they were procedurally barred because each "could have been, but w[as] not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

163

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law and, thus, the claim is barred from review here. There is no cause to excuse default on the basis of ineffective assistance of counsel, because this court previously determined that the ineffective assistance claim attached to these issues (raised as part of Claim H-7 in Petition) is without merit.

### 15.    **Improper verdict forms** (Claim S in Petition)

Boyd claims that the verdict forms improperly gave jurors the impression that they had to either convict him of every count of the indictment or acquit him. He asserts that the verdict forms effectively coerced the jury into returning a guilty verdict on four counts of capital murder, even if the jurors believed he was guilty of only one count of capital murder and not guilty of the other counts. When Boyd raised this claim on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals held that it was procedurally barred, because it "could have been, but w[as] not, raised and addressed at trial and on direct appeal (Issue XXIV). . . Rules 32.2(a)(2), (3) and (5), Ala. R Crim. P." *Boyd*, 746 So. 2d at 394.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law. Thus, this claim is barred from review here. There is no cause to excuse the default on the basis of ineffective

assistance of counsel since this court already has determined that the ineffective assistance claim attached to this issue (raised as part of Claim H-7 in Petition) is without merit.

**16. Prosecutorial misconduct and improper arguments** (Claim T in Petition)

Boyd argues that the prosecutor's misconduct and improper arguments prior to and during his trial and sentencing hearing deprived him of a fair trial. When Boyd raised these claims on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals held that the claims were procedurally barred, because "they could have been, but were not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and independent grounds for denying relief under state law. Thus, the claims are barred from review here. There is no cause to excuse the default on the basis of ineffective assistance of counsel, because this court previously determined that the ineffective assistance claim attached to this issue (raised as part of Claim H-8 in Petition) is without merit.

**17. Prejudicial presentence report** (Claim U in Petition)

Boyd claims that, prior to his sentencing, the trial court considered a prejudicial presentence report before rejecting the jury's recommendation that he be sentenced

165

to a term of life without the possibility of parole. He asserts that the report contained

statements purportedly made by him during an uncounseled interview, as well as a list

of his juvenile arrests. Boyd further claims the report was based on hearsay

commentary not attributed to anyone in particular, and that it relied solely on the

improperly obtained Taylor-Hardin evaluation for a psychological portrait of Boyd.

When Boyd raised this claim on appeal from the denial of his Rule 32 petition, the

Alabama Court of Criminal Appeals held that it was procedurally barred, because it

"could have been, but w[as] not, raised and addressed at trial and on direct appeal.

Rules 32.2(a)(3), and (5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 404.

The appellate court's decision rests upon procedural rules that are adequate and

independent grounds for denying relief under state law. The claim accordingly is

barred from review here. Boyd maintains that the ineffective assistance of his trial

and appellate counsel should excuse the procedural default. However, Boyd's claim

that his attorneys were ineffective for failing to object to the use of the allegedly

prejudicial presentence report is itself procedurally defaulted.[59]

## 18.    **Incomplete transcript** (Claim V in Petition)

Boyd claims that the court reporter's transcript of trial proceedings did not

---

[59] Boyd raised this claim in Claim 1-v of his second amended Rule 32 petition. PCR Vol. 2 at C-392-993; Tab P-45 at 6-7. However, he did not raise the claim on appeal from the denial of that petition. Thus, the claim is procedurally defaulted pursuant to *Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990).

contain portions of the *voir dire*, bench conferences, and information relevant to jury

selection and the composition of the jury pool. He contends that the omission of

these portions of trial proceedings prevented him from receiving a full review of his

case, and adequately litigating claims such as improper denial of strikes for cause, and

improper elimination of black venire members by the prosecution. When Boyd raised

this claim on appeal from the denial of his Rule 32 petition, the Alabama Court of

Criminal Appeals held that it was procedurally barred, "because it could have been,

but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and

(5), Ala. R. Crim. P." *Boyd*, 746 So. 2d at 381.

The state court's decision rests upon procedural rules that are adequate and

independent grounds for denying relief under state law, and the claim thus is barred

from review by this court. There is no cause to excuse the default on the basis of

ineffective assistance of counsel, because this court previously determined that the

ineffective assistance claim attached to the issue (Claim H-10 in Petition) is without

merit.

### 19.    **Double jeopardy / defective indictment** (Claim X in Petition)

Boyd challenges the fact that he was charged with eight counts of capital

murder for the deaths of two persons. He claims that the overwhelming majority of

language in each count was identical, that the counts were not temporally

distinguished in any way, and that each was largely predicated on the same acts. He

further challenges the state's act of splitting the kidnapping and robbery charges "into

'subcounts' that are not even included in the Alabama Code." Doc. no. 27, at 141.

He claims that the indictment was an attempt to prejudice jurors against him, by

leading them to believe that he was guilty of numerous crimes. He adds that the

state's method of charging violated his right to not be exposed to double jeopardy and

deprived him of a fair trial and sentencing.

When Boyd raised this claim on appeal from the denial of his Rule 32 petition,

the Alabama Court of Criminal Appeals held that the claim was procedurally barred,

> because it was raised and addressed at trial and could have been [but
> was not] raised on direct appeal. Rule 32.2(a)(2), and (a)(5), Ala. R.
> Crim. P. To the extent that the issue is presented as a double-jeopardy
> issue it is precluded because it could have been raised at trial and on
> appeal. Rules 32.2(a)(3) and (a)(5), Ala. R. Crim. P.

*Boyd*, 746 So. 2d at 379-80. The appellate court's decision rests upon procedural

rules that are adequate and independent grounds for denying relief under state law,

and the claim is barred from review by this court. Boyd's assertion that the

ineffective assistance of his trial and appellate counsel should excuse the procedural

default also fails, because this court found that the ineffective assistance claim

attached to this issue (Claim H-3 in Petition) is without merit.

168